1  JEFFREY D. WOHL (Cal. State Bar No. 096838)
2  JENNIFER L. ROTH (Cal. State Bar No. 260616)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
3  55 Second Street, 24th Floor
   San Francisco, California  94105-3441
4  Telephone:  (415) 856-7000
   Facsimile:  (415) 856-7100
5  Email:  jeffwohl@paulhastings.com
6  Email:  jenniferroth@paulhastings.com

7  Attorneys for Defendants Sodexo, Inc., and
   SDH Services West, LLC
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 | ROUBINA NAIYAN, on behalf of herself | No. CV10-9872 PSG (CWx)
   | and all others similarly situated,

13 |                                      | **DEFENDANTS' OPPOSITION TO**
14 |              Plaintiffs,             | **PLAINTIFF'S MOTION TO**
   |                                      | **REMAND**
15 |       vs.                            |
   |                                      | CLASS ACTION
16 | SODEXO, INC., a Delaware corporation;|
   | SDH Services West, LLC, a Delaware   | Date:        March 7, 2011
17 | limited liability company; and DOES 1| Time:        1:30 p.m.
   | through 100, inclusive.              | Courtroom:   880
18 |                                      | Judge:       Hon. Philip S. Gutierrez
19 |              Defendants.             |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page*

Table of Authorities ...................................................................................................... iii

I.    INTRODUCTION/SUMMARY OF ARGUMENT ............................................ 1

    A.    Removal Under CAFA ................................................................................ 1

        1.    The Citizenship of the Parties Is Diverse ........................................... 1

        2.    The Amount in Controversy Is More Than Satisfied .......................... 2

    B.    Removal Under ERISA ............................................................................... 3

II.   PROCEDURAL BACKGROUND ..................................................................... 4

III.  THERE IS REMOVAL JURISDICTION UNDER CAFA ................................ 5

    A.    Defendants Met Their Burden for Removal Under CAFA .......................... 5

    B.    None of Plaintiff's Attacks on Removal Under CAFA Has Any Merit ........ 7

        1.    There Is No Question But That the Parties Are Diverse .................... 7

            a.    Defendants Relied on Plaintiff's Own Pleading to Show
                That Plaintiff Is a Citizen of California, and Plaintiff
                Makes No Contrary Showing ..................................................... 7

            b.    Under *The Hertz Corp. v. Friend*, Sodexo and SDH
                Clearly Are Citizens of a State Other than California .............. 7

        2.    Plaintiff's Attack on the Sufficiency of Defendants' Amount-
           in-Controversy Calculations Ignores the Facts ................................. 8

            a.    Because the *Cevallos/Herrera* Settlement Was for a Class
                Period That Precedes the Class Period Here, It Is
                Irrelevant to the Removal Calculations .................................... 9

            b.    The Few Employees Who Terminated Less Than 30
                Days Before Defendants' Notice of Removal Also Do
                Not Affect the Removal Calculations ...................................... 10

            c.    Even if Defendants Disregard the Waiting-Time Penalties
                Claim, the $5 Million Amount in Controversy
                Requirement Remains Easily Satisfied ................................... 11

IV.   THERE ALSO IS REMOVAL JURISDICTION UNDER ERISA ...................... 11

    A.    Factual Background ................................................................................... 11

        1.    Sodexo Created the Vacation Plan as an ERISA-Governed
           Employee Welfare Benefit Plan to Provide Vacation Benefits
           While Making the Plan Subject to a Uniform National Set of
           Rules ................................................................................................. 11

**TABLE OF CONTENTS**
(*cont'd*)

*Page*

2. At All Times, Vacation Plan Benefits Have Been Adequately Funded Through an Irrevocable Trust That Protects Employees' Interests, and Not Out of Sodexo's General Corporate Assets ........................................................................ 13

    a. The Vacation Plan Is Funded by an Irrevocable Trust ........... 13

    b. Sodexo Adequately Funds the Trust ........................................ 13

    c. Vacation Plan Benefits Are Paid to Employees Through the Same Account Used to Pay Their Wages, But Are Covered by Funds from the Trust .......................................... 14

B. On Removal, This Court Has Subject Matter Jurisdiction Over State Law Claims That Are Completely Preempted by ERISA ........................... 15

C. The Vacation Plan Is Indisputably an ERISA Welfare Benefit Plan ........... 15

    1. ERISA Defines a "Welfare Benefit Plan" as a Plan That Provides Employment Benefits, Including Paid Time Off Benefits ...................................................................................... 15

    2. As Held by the U.S. Supreme Court in *Massachusetts v. Morash* and the Ninth Circuit in *California Hosp. Ass'n v. Henning*, a Separately Funded Plan That Provides Vacation Benefits Is an ERISA Employee Welfare Benefit Plan .................... 16

    3. Sodexo's Vacation Plan Meets the Definition of an ERISA-Covered Employee Welfare Benefit Plan ......................................... 17

        a. The Vacation Plan Provides Benefits to Plaintiff and the Putative Class That Are Covered by ERISA .......................... 17

        b. The Vacation Plan Has Been Administered in Compliance with ERISA ......................................................... 17

    4. Vacation Plan Benefits Are Paid From an Adequately Funded Trust, Not Sodexo's General Corporate Assets ................................ 18

V. CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Abraham v. Norcal Waste Systems, Inc.*,
  265 F.3d 811 (9th Cir. 2001) ....................................................................... 15

*Abrego v. Dow Chemical Co.*,
  443 F.3d 676 (9th Cir. 2006) ......................................................................... 6

*Brooks v. GAF Material Corp.*,
  532 F. Supp. 2d 779 (D.S.C. 2008) ............................................................... 9

*Cal. Div. of Labor Standards of Enforcement v. Dillingham Construction, N.A.,
Inc.*, 519 U.S. 316 (1997)............................................................................... 15

*California Hosp. Ass'n v. Henning*,
  770 F.2d 856 (9th Cir. 1985), *amended on other grounds*, 783 F.2d 946, *cert.
  denied*, 477 U.S. 904 (1986) ........................................................................ 16

*Castillo v. Romo*,
  2009 U.S. Dist. LEXIS 78463 (S.D. Cal. 2009)........................................... 8

*Czechowski v. Tandy Corp.*,
  731 F. Supp. 406 (N.D. Cal. 1990) .............................................................. 18

*Ellenburg v. Spartan Motors Chassis, Inc.*,
  519 F.3d 192 (4th Cir. 2008) ........................................................................ 6

*Fort Halifax Packing Co. Inc. v. Coyne*,
  482 U.S. 1 (1987)......................................................................................... 15

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ........................................................................ 7

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) ........................................................................ 7

*Lowdermilk v. United States Bank National Assoc.*,
  479 F.3d 994 (9th Cir. 2007) ........................................................................ 8

*Luckett v. Delta Airlines, Inc.*,
  171 F.3d 295 (5th Cir. 1999) ........................................................................ 6

*Massachusetts v. Morash*,
  490 U.S. 107 (1990).............................................................................. 15, 16

*McMahon v. Digital Equip. Corp.*,
  162 F.3d 28 (1st Cir. 1998)......................................................................... 17

1

# TABLE OF AUTHORITIES
*(cont'd)*

2

3
*Page*

*Metropolitan Life Ins. Co. v. Taylor*,
4        481 U.S. 58 (1987)..................................................................................... 15

*Pilot Life Ins. Co. v. Dedeaux*,
5        481 U.S. 41 (1987)..................................................................................... 15

6      *Shaw v. Delta Airlines*,
        463 U.S. 85 (1983)..................................................................................... 15
7
*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
8        303 U.S. 283 (1938)..................................................................................... 9

9      *The Hertz Corp. v. Friend*,
        130 S. Ct. 1181 (2010)................................................................................. 7
10
**Statutes**
11
Cal. Lab. Code
12
        § 226(e) ..................................................................................................... 11
13
28 U.S.C.
14
        § 1332(c)(1) ................................................................................................. 7
        § 1332(d)(2) ................................................................................................. 5
15      § 1441(a) ....................................................................................................... 5
        § 1446(a) ....................................................................................................... 5
16
29 U.S.C.
17
        § 1002(1).......................................................................................... 15, 16, 17
18      § 1002(2)(A) ............................................................................................... 16
        § 1002(3)..................................................................................................... 15
19      §§ 1021-1031 ............................................................................................. 17
        §§ 1021-1145 ............................................................................................. 15
20      § 1023(a)(3)(A) ......................................................................................... 17
        § 1051......................................................................................................... 16
21      § 1081(a) ..................................................................................................... 16
        § 1102......................................................................................................... 17
22      § 1103......................................................................................................... 17
        § 1132(a)(1)(B) ......................................................................................... 16
23      § 1144......................................................................................................... 15
        § 1144(a) ..................................................................................................... 15

24

25

26

27

28

## I.  INTRODUCTION/SUMMARY OF ARGUMENT

Defendants removed this action on two independent grounds: diversity-of-citizenship jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"); and federal subject-matter jurisdiction based on complete preemption of plaintiff's state law claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff's motion to remand challenges both of these grounds, but does so based on mere speculation, showing a complete disregard for the facts as established by defendants' notice of removal and supplemented with this opposition, and the applicable law.

### A.  Removal Under CAFA

Under CAFA, whenever the plaintiff in a putative class action brought on behalf of 100 or more persons, asserting claims against an out-of-state defendant, seeks to recover more than $5 million in damages, the case is subject to removal to federal court.  If the plaintiff does not want to end up in federal court, then either she should not bring the case as a class action, or she should limit her recovery to $5 million or less.

Here, plaintiff brings a class action, and does not limit her damages to $5 million. Instead, she simply disputes that (1) the citizenship of the parties is diverse; and (2) the amount in controversy has been satisfied.   Plaintiff's arguments have no merit; indeed, they are frivolous.

#### 1.  The Citizenship of the Parties Is Diverse.

Plaintiff argues that defendants' notice of removal is defective because they did not establish that plaintiff is a California citizen.  But plaintiff's argument is at odds with the allegations in her complaint.  Plaintiff alleged in her complaint that she is a California resident.  Based upon this allegation, defendants asserted, based upon information and belief, that plaintiff is a California citizen.  Because a defendant is only required to plead, not prove, diversity at the removal stage, defendants' allegation is sufficient for removal purposes.  Indeed, plaintiff never disputes that she is in fact a California citizen.

Further, plaintiff does not dispute that defendants Sodexo, Inc. ("Sodexo"), SDH Services West, LLC ("SDH"), and SDH's constituent members are non-California

1    companies.   Instead, she argues that defendants failed to provide sufficient facts to

2    illustrate that both Sodexo and SDH have their principal place of business in Maryland.

3    As detailed below, the majority of Sodexo's and SDH's executive and administrative

4    functions are performed, and the majority of Sodexo's and SDH's executive and

5    administrative officers are located in, the State of Maryland.

6          Accordingly, because plaintiff is a citizen of California and defendants are not, the

7    citizenship of the parties is diverse.

8                    **2.      The Amount in Controversy Is More Than Satisfied.**

9          In their notice of removal, defendants showed that even if just one of plaintiff's

10   claims were examined—her claim for waiting-time penalties—the amount in controversy

11   easily exceeds $5 million (indeed, the claim potentially is worth close to $6 million).

12         Plaintiff speculates that the previous *Cevallos/Herrera v. Sodexho* class action

13   settlement calls defendants' waiting-time penalties calculations into question.   But

14   plaintiff's conjecture is unfounded:  Not a single one of the 838 terminated employees

15   included in defendants' calculations was terminated during the *Cevallos/Herrera* class

16   period.  Accordingly, their claims for waiting-time penalties (to the extent they have any,

17   which defendants dispute) were not released as part of the *Cevallos/Herrera* settlement,

18   regardless of whether they were a class member in that case.

19         Additionally, plaintiff asserts that defendants improperly assumed that every

20   terminated employee was entitled to the 30-day maximum penalty under California Labor

21   Code section 203.  But even if those employees who terminated in fewer than 30 days

22   before the notice of removal were disregarded (all 11 of them), the remaining employees

23   who did terminate at least 30 days before the notice of removal (827 of them) are

24   sufficient to establish the amount in controversy exceeds $5 million.  And, of course, as

25   for those employees who terminated less than 30 days before the notice of removal (filed

26   on December 22, 2010), by now there is no question but that they would be entitled to the

27   full 30-day penalty assuming that they are entitled to the penalty at all (which, of course,

28   Sodexo disputes).

Finally, even if the Court disregarded altogether plaintiff's claim for waiting-time penalties, the amount in controversy still would exceed $5 million based solely on plaintiff's claim for noncompliant wage statements; indeed, that claim alone creates potential liability of over $6 million.

Thus, the amount in controversy is easily satisfied.

## B.   Removal Under ERISA

Separate and apart from CAFA jurisdiction, defendants removed on the grounds of subject-matter jurisdiction:  Plaintiff's state-law claims alleging that Sodexo does not pay out accrued vacation are completely preempted by ERISA, and therefore federal subject-matter jurisdiction lies.

Plaintiff disputes that the Sodexo Vacation Plan is governed by ERISA, but fails to specify any facts in support of her argument.  She equates the Vacation Plan with other vacation policies that courts have found failed to meet the requirements for ERISA coverage, but based on the actual operation of the Vacation Plan, there is no question that the Vacation Plan is an employee welfare benefit plan under ERISA.

Plaintiff does not and cannot dispute that the Vacation Plan was designed as an ERISA employee welfare benefit plan; that the purpose of the Vacation Plan—to provide vacation benefits to employees—is a proper objective of an ERISA-governed plan; and that the Vacation Plan has been administered in full compliance with all ERISA reporting and disclosure requirements.  Moreover, all Vacation Plan benefits are funded through an irrevocable trust, the assets of which are used solely for Vacation Plan benefits.  Sodexo has always adequately funded the Vacation Plan to ensure that all Vacation Plan liabilities are covered.

Plaintiff tries to equate the Vacation Plan with "advance-and-recapture" paid-leave programs, under which the employer initially pays the leave benefit out of its own pocket, then funds the program trust with just enough money to cover the benefit it has just paid, and then reimburses itself back from the trust for its advance, leaving little or no assets remaining in the trust.  These arrangements have been viewed as not being governed by

1  ERISA.  But that is not how the Vacation Plan has been operated.  Accordingly, ERISA

2  governs the Vacation Plan and removal under ERISA was proper.

3        For all of these reasons, the Court should deny plaintiff's motion to remand.

4  **II.  PROCEDURAL BACKGROUND**

5        Plaintiff initiated this action in the Superior Court of California, County of Los

6  Angeles, on November 18, 2010.  (*See* Notice of Removal [Docket No. 1], ¶ 1.)  In her

7  complaint, plaintiff purported to bring a class action on behalf of herself and all other

8  exempt individuals employed by defendants in California from November 18, 2006, to

9  the present.  She asserted four causes of action for (1) failure to pay wages upon

10  termination, (2) failure to provide accurate wage statements, (3) violation of California

11  Labor Code section 227.3, and (4) unfair competition.  (*Id.*, ¶ 2.)

12        Defendants answered in state court on December 21, 2010, and then timely

13  removed the action to this Court under CAFA and ERISA.  (*See id.*, ¶ 4.)  In its removal

14  notice, defendants pled the prerequisites to federal subject-matter jurisdiction under

15  CAFA, including the parties' diverse citizenship, the number of class members, and the

16  amount in controversy.  (*Id.*, ¶¶ 9-22.)  In support of its notice of removal, defendants

17  submitted the declaration of Deborah Crutchfield, a Sodexo Human Resources

18  Information Systems Analyst.  (*See* Docket No. 3.)  Ms. Crutchfield testified that from

19  November 18, 2006, to December 21, 2010, defendants employed approximately 2,060

20  exempt individuals in the State of California; of those individuals, at least 838 terminated

21  from defendants on or after November 18, 2006.  (Crutchfield Decl., ¶ 6.)

22        Based on this population of former exempt employees and their wage rates, and

23  plaintiff's allegations in the complaint, defendants calculated potential recovery on the

24  third cause of action for failure to pay all wages earned upon termination of employment

25  as $5,882,575.87.[1]  (*See* Notice of Removal, ¶ 19.)  Therefore, Sodexo pled an amount in

---

26  [1]      Plaintiff attempts to make an issue of the fact that defendants did not provide the

27  records listing plaintiff's and putative class members' hourly wage rates, and instead
relied on Ms. Crutchfield's testimony, given under penalty of perjury, that she correctly

28  summarized what the records show.  Although as a matter of proof it was unnecessary for

controversy that easily exceeded the $5 million amount-in-controversy requirement under CAFA.  (*See id.*, ¶ 20.)

Also in its removal notice, defendants pled the prerequisites to federal subject-matter jurisdiction under ERISA.  (*Id.*, ¶¶ 23-37.)  In support of its notice of removal, defendants submitted the declaration of Julie Peterson, the Vice President, Compensation and Benefits, for Sodexo.  (*See* Docket No. 4.)  Ms. Peterson (1) authenticated the Vacation Plan and 2006 Amendment to the Vacation Plan; and (2) testified that the Vacation Plan applies to employees of both Sodexo and SDH.  (Peterson Decl., ¶ 3.)  Because, as described in further detail below, (1) plaintiff's complaint specifically references an ERISA plan; (2) plaintiff is an ERISA plan participant and asserts claims against the ERISA plan sponsor and fiduciary; and (3) resolution of plaintiff's claims requires reference to ERISA, an ERISA Vacation Plan, and ERISA-governed participant communications, removal under ERISA was proper.

## III.   THERE IS REMOVAL JURISDICTION UNDER CAFA

### A.    Defendants Met Their Burden for Removal Under CAFA.

Federal law permits "any civil action brought in a State court of which the district courts … have original jurisdiction" to "be removed by the defendant … to the district court … for the district and the division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Under CAFA, federal courts have original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant."  *Id.*, § 1332(d)(2).  To effect removal, the defendant must file a notice of removal that contains "a short and plain statement of the grounds for removal" and is signed under Rule 11, Federal Rules of Civil Procedure.  *Id*, § 1446(a).  The liberal standard for notice

defendants to provide the underlying records, as a precaution defendants submit with this opposition the underlying data, including each employee's hourly wage rate, used by Ms. Crutchfield to perform the calculations, attached as Exhibit A to the Supplemental Declaration of Deborah Crutchfield in Opposition to Plaintiff's Motion to Remand.

1    pleading under Rule 8 applies to a notice of removal and the notice is sufficient "if it

2    alleges that the parties are of diverse citizenship and that the matter in controversy

3    exceeds … the sum specified by 28 U.S.C. § 1332[.]"  *See Ellenburg v. Spartan Motors*

4    *Chassis, Inc.*, 519 F.3d 192, 199-200 (4th Cir. 2008)  (internal quotation omitted).

5          Although CAFA created a new avenue to federal court, it did not displace existing

6    rules about how jurisdiction is determined.  *See, e.g.*, *Abrego v. Dow Chemical Co*., 443

7    F.3d 676, 684-685 (9th Cir. 2006)  ("… Congress carefully inserted into the legislation

8    the changes it intended and did not mean otherwise to alter the jurisdictional terrain.").

9    Under these rules, where the complaint does not state the amount in controversy, the

10   defendant can invoke federal jurisdiction by demonstrating that it is "facially apparent"

11   from the complaint that the value of the claims exceed the jurisdictional minimum or the

12   defendant may set forth facts that support the exercise of federal jurisdiction.  *See*

13   *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  The sufficiency of the

14   removal allegations are determined by a preponderance of the evidence, *i.e.*, is it more

15   likely than not that the amount in controversy exceeds the statutory minimum.  *See*

16   *Abrego*, 443 F.3d at 683 ("Where the complaint does not specify the amount of damages

17   sought, the removing defendant must prove by a preponderance of the evidence that the

18   amount in controversy requirement has been met.").

19         Here, defendants adequately pleaded and proved that the parties' citizenship is

20   diverse (*see* Notice of Removal, ¶¶ 10-13); that the number of putative class member

21   exceeds 100 (*see id.*, ¶¶ 14-15 [approximately 2,060 putative class members]); and that

22   plaintiff's claims place in controversy more than $5 million, exclusive of interest and

23   costs (*see* Notice of Removal, ¶¶ 16-31; Crutchfield Decl., ¶¶ 8-14).

24         Accordingly, defendants satisfied the standards for removal under CAFA.

25   ///

26   ///

27   ///

28   ///

**B.     None of Plaintiff's Attacks on Removal Under CAFA Has Any Merit.**

      **1.     There Is No Question But That the Parties Are Diverse.**

            **a.     Defendants Relied on Plaintiff's Own Pleading to Show That Plaintiff Is a Citizen of California, and Plaintiff Makes No Contrary Showing.**

At the removal pleading stage, a defendant "[is] merely required to allege (and not to prove) diversity." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Here, defendants did just that. In their notice of removal, defendants alleged on information and belief that plaintiff is a citizen of California, based on plaintiff's allegation in her complaint that she is a California resident. (*See* Notice of Removal, ¶ 11.) Where (as here) a party produces evidence supporting a presumption as to domicile (*e.g.*, continuing residence), the burden shifts to the other party to come forward with contrary evidence. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). But nowhere in plaintiff's motion to remand does she dispute that she is, in fact, a citizen of California. Thus, defendants' allegation regarding plaintiff's citizenship is sufficient for removal purposes.

            **b.     Under *The Hertz Corp. v. Friend*, Sodexo and SDH Clearly Are Citizens of a State Other than California.**

A corporation is a citizen of the state of its incorporation as well as the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business refers to the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under *Friend*, Sodexo and SDH clearly are citizens of a state other than California.

Sodexo is now, and was as of November 18, 2010, a corporation organized under the laws of the State of Delaware. (Crutchfield Decl., ¶ 3.) SDH is now, and was as of November 18, 2010, a limited liability company organized under the laws of the State of Delaware. (*Id.*, ¶ 4.) SDH is composed solely of Sodexo America, LLC, which is now, and was as of November 18, 2010, a limited liability company organized under the laws

1   of the State of Delaware.  (*Id.*)  Sodexo America, LLC, in turn, is composed solely of

2   Sodexo Management, Inc., which is now, and was as of November 18, 2010, a

3   corporation organized under the laws of the State of New York.  (*Id.*)

4          For all of these Sodexo entities, their principal place of business is at Gaithersburg,

5   Maryland, because that is where the majority of their core executive and major

6   administrative functions are carried out.   (Supplemental Declaration of Deborah

7   Crutchfield ["Supp. Crutchfield Decl."], ¶ 4.)   Further, their corporate policies and

8   operations are formulated and carried out in Gaithersburg, and the initial and ultimate

9   decisions concerning governance and oversight rests with the Board of Directors and

10  high-level officers that work out of and regularly meet in Gaithersburg.  (*Id.*, ¶ 5.)  While

11  Sodexo and SDH maintain several regional and local offices in California, they perform

12  none of the core executive and administrative functions or major administrative

13  operations in California.  (*Id.*, ¶ 8.)

14         Because defendants have established that they are citizens of states other than

15  California, and because plaintiff is a citizen of California, there is diversity of citizenship.

16         **2.     Plaintiff's Attack on the Sufficiency of Defendants' Amount-in-Controversy Calculations Ignores the Facts.**

17

18         Plaintiff's attack on defendants' calculations of the amount in controversy nowhere

19  denies a fundamental fact: plaintiff is seeking to recover damages in excess of $5 million,

20  the jurisdictional minimum.  If plaintiff had wanted to stay out of federal court, she could

21  have alleged—assuming she could have done so in good faith—that she was seeking not

22  more than $5 million in damages.  *See, e.g.*, *Lowdermilk v. United States Bank National*

23  *Assoc.*, 479 F.3d 994, 996 (9th Cir. 2007) (where plaintiff alleges that "the aggregate total

24  of the claims pled herein do not exceed five million dollars," plaintiff is "plead[ing]

25  conservatively to secure a state forum"); *Castillo v. Romo*, 2009 U.S. Dist. LEXIS 78463,

26  *5-6 (S.D. Cal. 2009) ("plaintiff may sue for less than the amount she may be entitled to

27  if she wishes to avoid federal jurisdiction and remain in state court [and] Plaintiffs have

28  exercised that option" where complaint alleges that "the amount in controversy does not

1   reach or exceed Five Million Dollars," which "limit[s] their recovery to an amount under

2   $5,000,000"); *Brooks v. GAF Material Corp.*, 532 F. Supp. 2d 779, 782 (D.S.C. 2008)

3   (granting motion to remand where plaintiff alleges that the "amount in controversy for

4   the entire proposed class does not exceed five million dollars [and] court construes [this]

5   language [as] a purposeful limitation on damages to below the jurisdictional amount").

6   *Cf. St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("The claim,

7   whether well or ill founded in fact, fixes the right of the defendant to remove, and the

8   plaintiff ought not to be able to defeat that right and bring the cause back to the state

9   court at his election.  If he does not desire to try his case in the federal court he may

10  resort to the expedient of suing for less than the jurisdictional amount, and though he

11  would be justly entitled to more, the defendant cannot remove.").

12      Instead, plaintiff remains silent on the actual scope of her damages claims and

13  instead raised a series of red-herring arguments against defendants' amount-in-

14  controversy calculations, none of which withstands scrutiny.

15              **a.    Because the *Cevallos/Herrera* Settlement Was for a Class
16                      Period That Precedes the Class Period Here, It Is Irrelevant
                        to the Removal Calculations.**

17      Plaintiff asserts that defendants "completely ignore" the "crucial fact" of a

18  previous class action settlement in its waiting-time penalties calculation.  (Remand Mtn.

19  at 9:23-27.)[2]   But it is plaintiff who ignores the facts that support the calculations.

20  Plaintiff is obviously uninformed about the *Cevallos/Herrera v. Sodexho* settlement,

21  which has no effect whatsoever on defendants' removal calculations.

22      In *Cevallos/Herrera v. Sodexho*,[3] filed in 2005, the plaintiffs (like plaintiff here)

23

24  _____

    [2]    Sodexo cites to plaintiff's motion to remand, filed as Docket Number 9, as
    "Remand Mtn. at [page:line]."

25  [3]    There were two cases filed against Sodexo (at the time called "Sodexho"):
    *Cevallos v. Sodexo, Inc.*, Alameda Superior No. RG06268867; and *Herrera v. Sodexho,*
26  *Inc.*, Santa Clara Superior No. 105 CV 035908.  Once the parties agreed to a settlement
    of the cases, the settlement was approved and administered and both *Cevallos* and
27  *Herrera* were dismissed.  (Wohl Decl., ¶¶ 3-4.)

28

_____

sued for unpaid vacation wages under the Sodexo Vacation Plan.  (Declaration of Jeffrey D. Wohl in Opposition to Plaintiff's Motion to Remand ["Wohl Decl."], ¶¶ 2-3.)  In 2006, the case settled.  The settlement resolved the vacation claims and related claims of all Sodexo employees through November 21, 2006 (the date of final approval of the settlement); any new vacation claim or related claim arising after November 21, 2006, was unaffected by the settlement.  (Wohl Decl., ¶ 3, Exhs. A, B.)  Thus, while the settlement extinguished waiting-time penalty claims associated with vacation claims for those members of the class whose employment had terminated by November 21, 2006, it did not do so for those class members who continued their employment with Sodexo as of November 21, 2006, or, of course, for non-class members who became Sodexo employees after that date. (*Id.*)

Here, plaintiff filed this action on November 18, 2010.  (Cmplt., Docket No. 1.)  Her proposed class includes all Sodexo managers employed as of November 18, 2006 (four years before she filed suit), and thereafter.  (*Id.*, ¶ 12.)  Because none of the 838 terminated employees referenced by the defendants in their notice of removal terminated their employment with Sodexo on or before November 21, 2006, Supp. Crutchfield Decl., ¶ 12, none of their claims for waiting-time penalties was released under the *Cevallos/Herrera* settlement.  Consequently, that settlement has no bearing on defendants' removal calculations.

> **b. The Few Employees Who Terminated Less Than 30 Days Before Defendants' Notice of Removal Also Do Not Affect the Removal Calculations.**

Plaintiff also asserts that defendants' removal calculations were overstated because not every terminated employee was entitled to the maximum 30-day penalty.  (Remand Mtn. at 11:11-12:1.)  Plaintiff is mistaken in her conclusion.  Of the 838 terminated employees, only 11 terminated less than 30 days before the notice of removal (filed on December 22, 2010).  (Supp. Crutchfield Decl., ¶ 13.)  Even if these employees were disregarded for purposes of the calculation, the remaining figure for waiting-time penalties still would exceed $5 million.  (*Id.*)  Furthermore, with the passage of time

1    (coming on two months since removal), the waiting-time penalty claims of those

2    employees certainly now has reached 30 days.

3              **c.      Even if Defendants Disregard the Waiting-Time Penalties**
                         **Claim, the $5 Million Amount in Controversy Requirement**
4                        **Remains Easily Satisfied.**

5         Finally, even if the Court disregarded in its entirety plaintiff's claim for waiting-

6    time penalties, the amount in controversy remains satisfied by yet another one of

7    plaintiff's claims: penalties for failure to provide compliant wage statements.

8         Plaintiff alleges in her complaint that defendants failed to provide compliant wage

9    statements to her and putative class members.  (Cmplt., ¶ 36.)  California Labor Code

10   section 226(e) requires an employer to pay an emplyte the greater of all actual damages

11   caused by an employer's failure to provide compliant wage statements, or a penalty of

12   $50 per employee for the initial pay period in which a violation occurs and $100 per

13   employee for each violation in a subsequent pay period, not to exceed an aggregate of

14   $4,000 per employee exclusive of attorneys' fees and costs.  Accordingly, if, as plaintiff

15   alleges, defendants owe all putative class members penalties for failing to provide

16   compliant wage statements, then based on the number of exempt employees in California,

17   these penalties exceed $6,489,650, exclusive of interest and costs.  (Supp. Crutchfield

18   Decl., ¶¶ 14-16.)

19        Thus, regardless of the perspective, the conclusion remains the same:  The amount

20   in controversy in this action exceeds $5 million, and there is CAFA jurisdiction

21   supporting removal.

22   **IV.   THERE ALSO IS REMOVAL JURISDICTION UNDER ERISA**

23        **A.    Factual Background.**

24              **1.      Sodexo Created the Vacation Plan as an ERISA-Governed**
                         **Employee Welfare Benefit Plan to Provide Vacation Benefits**
25                       **While Making the Plan Subject to a Uniform National Set of**
                         **Rules.**
26

27        In 1998, Sodexo created the Vacation Plan, which has two component parts, (i) the

28   Accrue and Take policy; and (ii) the Vested Vacation policy.  (*See* Declaration of Julie

1    Peterson in Support of Defendants' Notice of Removal ["Peterson Decl."], ¶ 3, Exh. A,
2    Amendment, §§ 2.02, 2.03) (Docket No. 4).   The Accrue and Take policy covers
3    substantially all Sodexo and SDH salaried employees, while the Vested Vacation policy
4    covers substantially all Sodexo and SDH full-time, non-temporary hourly employees.
5    (*See id.*, § 2.03(a)-(b).)

6    Under the Accrue and Take policy, defendants' salaried employees, like plaintiff,
7    accrue vacation hours ratably over the course of the year.  (Peterson Decl., ¶ 3, Exh. A,
8    Amendment, §§ 2.02(a), 2.03(b).)  Depending on their level of employment, employees
9    are eligible to accrue up to 200 hours of vacation for the year.  If a salaried employee
10   terminates mid-year, he or she is paid out all unused vacation accrued to date.  (*Id.*,
11   §§ 2.03(b)-(c), 2.06.)  At the start of a new Vacation Plan year, a continuing California
12   employee's accrued, but unused, vacation is carried over to the next year.  (*Id.*, § 2.05(c).)

13   Sodexo, which operates in several sates, not just California, designed and
14   implemented the Vacation Plan to comply with, and be governed by, ERISA to ensure
15   that the Vacation Plan would be administered under a uniform national set of rules, rather
16   than the differing state laws governing vacation pay.  To comply with ERISA, Sodexo
17   adopted a Vacation Plan document, which among other things, establishes that the
18   benefits are to be funded through a trust, identifies Sodexo as the named fiduciary of the
19   Vacation Plan, and outlines the duties of the fiduciary.  (*See* Declaration of Suzanne
20   Greenlee in Opposition to Plaintiff's Motion to Remand ["Greenlee Decl."], ¶ 3.)

21   As the Vacation Plan's named fiduciary, Sodexo ensures that the Vacation Plan
22   complies with ERISA's extensive reporting and accounting requirements.  (Greenlee
23   Decl., ¶ 4.)   For example, Sodexo publishes a Summary Plan Description, which
24   describes Vacation Plan benefits, eligible employees, and procedures for claim dispute
25   resolution.  (*Id.*)  Every year since 2007, at Sodexo's request, the independent accounting
26   firm of BDO USA audits the Vacation Plan's financial statement.  (*See* Declaration of
27   Dan Trigiani in Opposition to Plaintiff's Motion to Remand ["Trigiani Decl."], ¶ 3.)
28   Prior to 2007, the independent accounting firm of Ernst & Young audited the Vacation

1    Plan's financial statement.  (*Id.*)

2        Defendants hold the Vacation Plan out to their employees as an ERISA plan, and

3    Sodexo annually files documents, including a summary of the Vacation Plan's Voluntary

4    Employee Benefit Association ("VEBA") transactions, with the DOL and the Internal

5    Revenue Service, neither of which has ever challenged the Vacation Plan's ERISA status.

6    (Trigiani Decl., ¶ 4.)

7            **2.      At All Times, Vacation Plan Benefits Have Been Adequately
                      Funded Through an Irrevocable Trust That Protects Employees'**
8            **            Interests, and Not Out of Sodexo's General Corporate Assets.**
             **    a.      The Vacation Plan Is Funded by an Irrevocable Trust.**
9

10       An integral part of the Vacation Plan is the VEBA trust that funds it, of which

11   Marc Blass ("Blass") serves as Trustee.  (Trigiani Decl., ¶ 5.)  The trust holds assets

12   solely for the benefit of Vacation Plan participants, and the Vacation Plan benefits are

13   funded solely through the trust.  (*Id.*, ¶ 6.)  To ensure complete liquidity and maximize

14   the conservation of principal, trust assets have been invested in an interest-bearing money

15   market account.  (*Id.*, ¶ 5.)

16           **b.      Sodexo Adequately Funds the Trust.**

17       Sodexo's funding contributions for the Vacation Plan are made at the beginning of

18   each Vacation Plan accounting cycle, which is a four- or five-week period.  (Trigiani

19   Decl., ¶ 7.)  Shortly before the beginning of each cycle, Sodexo estimates the Vacation

20   Plan's liability for the upcoming cycle and funds the trust accordingly.  (*Id.*)  This

21   calculation is based on historical Vacation Plan benefit usage, taking into account a

22   number of factors, including employee population growth, increase in salaries, *etc*.  (*Id.*)

23       Sodexo takes the funding standards for the Vacation Plan very seriously, having

24   deposited a *minimum* funding reserve of $1,687,000.  (Trigiani Decl., ¶ 8.)  This

25   minimum funding reserve ensures that the Vacation Plan always has a substantial reserve

26   to pay claims.  (*Id.*)

27       After determining the contribution for the upcoming cycle, Sodexo's Corporate

28   Benefits Department directs the company's Accounting Department to wire that amount

1   to the trust.   (Trigiani Decl., ¶ 10.)   Sodexo's contributions to the trust have been

2   intended to ensure adequate funding for each Vacation Plan cycle.   (*Id.*, ¶ 11.)   After

3   making each initial contribution to the trust, Sodexo monitors the trust balance to ensure

4   that it is sufficient to cover actual Vacation Plan benefits.   (*Id.*, ¶ 10.)

5          Because it is impossible to predict with certainty the actual number of Vacation

6   Plan days defendants' employees will use during each cycle, Sodexo cannot always be

7   sure that its initial contribution will be sufficient to meet all liabilities incurred during the

8   cycle.   Nevertheless, Sodexo's initial estimate of the Vacation Plan's liability has proven

9   mostly accurate.   (*See* Trigiani Decl., ¶ 12.)   In those instances where Sodexo's initial

10  estimate proved too low to both pay all Vacation Plan benefits *and* to maintain the

11  minimum funding level set by Sodexo, Sodexo contributed additional amounts to the

12  trust to ensure that it had sufficient assets to pay liabilities.   (*Id.*)

13         Thus, at all times the trust held sufficient assets to satisfy its actual liability for

14  each Vacation Plan cycle as well as its cash flow needs.

15                    **c.     Vacation Plan Benefits Are Paid to Employees Through the
                              Same Account Used to Pay Their Wages, But Are Covered**
16                            **by Funds from the Trust.**

17         Vacation Plan benefits are paid to participants through the same bank account used

18  for their bi-weekly wage checks and direct deposits.   (Trigiani Decl., ¶ 13.)   Prior to

19  payday, Sodexo calculates the total current cost of Vacation Plan benefit usage reported

20  by employees during that pay period.   (*Id.*)   Sodexo's Corporate Benefits Department, on

21  behalf of the Vacation Plan, then directs the trustee to wire-transfer sufficient trust funds

22  to satisfy the benefits to be paid.   (*Id.*)

23         The trust funds are wired directly to a Sodexo account at Citibank.    Sodexo

24  transfers to the same account funds to cover wage checks and direct deposits.   (Trigiani

25  Decl., ¶ 13.)   Notwithstanding the combination of the two funding sources in the same

26  account, a strict accounting is regularly performed to ensure that all Vacation Plan benefit

27  payments are covered with trust funds, and all wage payments are covered by Sodexo

28  funds.   (*Id.*, ¶ 14.)

**B.**     **On Removal, This Court Has Subject Matter Jurisdiction Over State Law Claims That Are Completely Preempted by ERISA.**

ERISA is a comprehensive statutory scheme with the two-fold purpose of protecting employee interests in employee welfare benefit plans and protecting employers from conflicting and inconsistent state and local regulation of such plans. *Shaw v. Delta Airlines*, 463 U.S. 85, 90 (1983). Employees' interests are protected by ERISA's requirements of reporting, disclosure, participation rights, vesting of rights to benefits, funding, fiduciary responsibilities, and claims procedures. 29 U.S.C. §§ 1021-1145; *Massachusetts v. Morash*, 490 U.S. 107, 112-13 (1990). ERISA's broad preemption of state and local laws relating to employee welfare plans shields employers from inconsistent local regulation of ERISA-governed plans. 29 U.S.C. § 1144; *Fort Halifax Packing Co. Inc. v. Coyne*, 482 U.S. 1, 9 (1987).

State-law claims that "relate to" an ERISA-governed plan and fall within the scope of ERISA's civil enforcement provisions are "completely preempted" by ERISA, meaning they may be removed to federal court. 29 U.S.C. § 1144(a); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Cal. Div. of Labor Standards of Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997); *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811, 820 (9th Cir. 2001).

Here, plaintiff's claims are completely preempted because (1) the Vacation Plan is an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1); and (2) plaintiff's claims "relate to" the Vacation Plan and fall within ERISA's civil enforcement scheme. 29 U.S.C. § 1132(a)(1)(B).

**C.**     **The Vacation Plan Is Indisputably an ERISA Welfare Benefit Plan.**

**1.**     **ERISA Defines a "Welfare Benefit Plan" as a Plan That Provides Employment Benefits, Including Paid Time Off Benefits.**

ERISA regulates two types of employee benefit plans: pension benefit plans and welfare benefit plans. 29 U.S.C. § 1002(3). Pension benefit plans are generally those

1    that provide retirement or deferred income to employees. *Id.*, § 1002(2)(A). Welfare

2    benefit plans, on the other hand, provide other kinds of employee benefits, including

3    medical, surgical, or hospital-care benefits; benefits in the event of sickness, accident,

4    disability, death, or unemployment; apprenticeship benefits; *and vacation benefits*. *Id.*,

5    § 1002(1) (emphasis added). Different funding, reporting, and other requirements apply

6    to pension plans compared to welfare plans. *See e.g., id.*, §§ 1051, 1081(a).

        **2.    As Held by the U.S. Supreme Court in *Massachusetts v. Morash* and the Ninth Circuit in *California Hosp. Ass'n v. Henning*, a Separately Funded Plan That Provides Vacation Benefits Is an ERISA Employee Welfare Benefit Plan.**

10       When the issue arose whether any employer vacation program constitutes an

11    ERISA-governed welfare benefit plan, the U.S. Supreme Court made clear that the key

12    factor lies in whether benefits are satisfied from the employer's general corporate assets

13    rather than out of a dedicated fund. *Morash*, U.S. at 114. The Court in *Morash* noted

14    that while an employer's policy of paying vacation benefits out of general corporate

15    assets would not qualify as an employee welfare benefit plan subject to ERISA, "the

16    creation of a separate fund to pay employees vacation benefits would subject a single

17    employer to the regulatory provisions of ERISA." *Id.* In so ruling the Supreme Court

18    cited and relied upon the Ninth Circuit's decision in *California Hosp. Ass'n v. Henning*,

19    770 F.2d 856, 861 (9th Cir. 1985), *amended on other grounds*, 783 F.2d 946, *cert.*

20    *denied*, 477 U.S. 904 (1986), in which the court noted that the funding of vacations other

21    than out of the employer's general assets remains subject to ERISA as a covered

22    "vacation benefit." As the Supreme Court wrote in *Morash*, employer policies that

23    provide paid time away from work but do not establish a separate fund for such payment

24    do not implicate ERISA concerns, and consequently, do not subject the employer to

25    ERISA requirements. *Morash*, 490 U.S. at 116.

26       Plaintiff's discussion of *Morash* and *Henning* (Mot. to Remand at 14:5-15)

27    obscures the fundamental and dispositive distinction, highlighted by both of those cases,

28    between funded, ERISA-governed vacation plans, like the Vacation Plan, and garden-

variety, unfunded employer vacation policies, which are exempted from ERISA.

### 3. Sodexo's Vacation Plan Meets the Definition of an ERISA-Covered Employee Welfare Benefit Plan.

#### a. The Vacation Plan Provides Benefits to Plaintiff and the Putative Class That Are Covered by ERISA.

ERISA governs employee welfare benefit plans that an employer establishes or maintains through the purchase of insurance or otherwise, for the purpose of providing, among other benefits, paid vacation time. 29 U.S.C. § 1002(1). Here, the Vacation Plan exclusively creates, governs, and (through the trust established in connection with the Vacation Plan) funds defendants' employees entitlement to Vacation Plan benefits.

Plaintiff repeatedly contends that as an SDH employee, the Vacation Plan does not apply to her. But plaintiff is mistaken. In support of defendants' notice of removal, Ms. Peterson not only authenticated the Vacation Plan, she also testified that the Vacation Plan applies to employees of Sodexo and its affiliate, SDH. (*See* Peterson Decl., ¶ 3.) Thus, the Vacation Plan indisputably provides the benefits of an ERISA employee welfare benefit plan to plaintiff and the putative class.

#### b. The Vacation Plan Has Been Administered in Compliance with ERISA.

Sodexo designed and implemented the Vacation Plan to comply with, and be governed by, ERISA. It created the trust, which is held solely for the benefit of participating employees and not for the benefit of Sodexo. 29 U.S.C. § 1103. Sodexo also complies with ERISA's extensive reporting and accounting requirements by publishing a Summary Plan Description describing Vacation Plan benefits, eligible employees, and procedures for claim dispute resolution, *id.*, § 1102; having an independent audit of the Vacation Plan's financial statement conducted each year, *id.*, § 1023(a)(3)(A); and publishing and filing an annual report with the DOL, including a summary of the Plan's trust fund transactions, *id.*, §§ 1021-1031. Sodexo's complete compliance with ERISA's reporting and disclosure requirements also evidences the Vacation Plan's ERISA status. *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 38 (1st

Cir. 1998) (when employer partially funds plans from sources outside of general assets, files documents with DOL and IRS consistent with plan's ERISA status, and informs employees that Plan is subject to ERISA regulation, plan covered by ERISA).

### 4. Vacation Plan Benefits Are Paid From an Adequately Funded Trust, Not Sodexo's General Corporate Assets.

Vacation benefits are paid by the Vacation Plan, from assets held in its trust, and *not* from Sodexo's general assets.  Plaintiff cannot dispute that Sodexo wire-transfers adequate funds from the trust to the Citibank account, and checks and directs deposits are issued from the Citibank account to disburse vacation benefits to employees.

Further, plaintiff cannot dispute that Sodexo implemented a legitimate funding strategy for the trust:  It has established a minimum funding level of $1.68 million and had year-end balances during the class period of $1,742,227 in 2006, $3,617,402 in 2007, $1,828,861 in 2008, and $2,334,177 in 2009.  (Trigiani Decl., ¶¶8-9.)

Plaintiff cites *Czechowski v. Tandy Corp.*, 731 F. Supp. 406 (N.D. Cal. 1990), for the proposition that "the mere presence of a trust or other separate account from which an employer reimburses itself for vacation pay should not automatically result in ERISA coverage…" (Mtn. to Remand at 14:15-24.)  But plaintiff can analogize Sodexo's trust to the trust in *Czechowski* only by grossly mischaracterizing Sodexo's trust.  In *Czechowski*, vacation benefits were paid directly from Tandy's general assets. *Id.* at 408.  Tandy then made a contribution to the trust and then immediately sought reimbursement for the distributed benefits. *Id.* Thus, *Czechowski* provides no guidance here because it involved an advance-and-recapture scheme.  In other words, Tandy paid the employees vacation benefits directly out of its general assets, later seeking reimbursement from the trust fund.  That the *Czechowski* trust distributed millions of dollars in benefits was irrelevant because the trust never held more than $1,000; it was but a momentary conduit for Tandy's funds. *Id.* Here, the Sodexo trust generally holds millions of dollars, accumulates funds over time and, based on the significant balance, earns substantial interest each year.

1    Accordingly, because the Vacation Plan is undisputedly an ERISA welfare benefit
2    plan, defendants' removal under ERISA was proper.

3    **V.    CONCLUSION**

4    The uncontroverted evidence before the Court shows that defendants satisfied their
5    burden to plead and prove federal removal jurisdiction under both CAFA and ERISA.
6    Plaintiff's uninformed attacks on defendants' showing that the parties are diverse, the
7    amount in controversy exceeds $5 million, and defendants' Vacation Plan is operated
8    pursuant to ERISA, cannot defeat defendants' right to a federal forum.  For these reasons,
9    plaintiff's motion to remand should be denied.

10   Dated:  February 14, 2011.  JEFFREY D. WOHL
                                  JENNIFER L. ROTH
11                                PAUL, HASTINGS, JANOFSKY & WALKER LLP

12
13                                By:   /s/ Jeffrey D. Wohl
                                              Jeffrey D. Wohl
14                                    Attorneys for Defendants Sodexo, Inc.,
                                        and SDH Services West, LLC
15
16
17
18
19
20
21
22
23
24
25
26
27
28